


Patrick B. Streb/State Bar No. 116555
WELTIN LAW OFFICE P.C.
1432 Martin Luther King Jr. Way
Oakland, CA 94612
Telephone: 510-251-6060
Facsimile: 510-251-6040

Attorneys for Plaintiff
STEPHEN SEGURSON


James B. Nebel/State Bar No.69626
FLYNN, DELICH & WISE LLP
One California Street, Suite 350
San Francisco, California
Telephone: 415-693-5566
Facsimile: 415-693-0410

Attorneys for Defendant
HAPAG-LLOYD AG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN SEGURSON, <br><br> Plaintiff, <br><br> vs. <br><br> HAPAG-LLOYD <br> and DOES 1 to 20, inclusive, <br><br> Defendants. | Case No.: 08-01406 BZ <br><br> **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** <br><br> Date: June 16, 2008 <br> Time:  4:00 PM <br> Courtroom: G 15th Floor |

Pursuant to Federal Rule of Civil Procedure 26(f) and this Court's Order Setting Initial Case Management Conference, the plaintiff and defendant file this Joint Case Management Statement and Rule 26(f) Report.

These parties, represented by counsel noted below, conducted their FRCP 26(f) conference on June 4, 2008 to discuss the nature and basis of their respective claims and defenses, the possibility of prompt settlement or resolution of the case, the initial disclosures, and a proposed

discovery plan.

### 1. Jurisdiction and Service

This Court has subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. This case was properly removed to this Court pursuant to 28 U.S.C. § 1441. No issue exists regarding venue. There are no issues as to service. All parties have been served.

### 2. Facts

Plaintiff alleges that he sustained personal injuries on or about November 28, 2005 while working as a longshoreman attempting to assist in the docking of the M/V KOBE EXPRESS at the Port of Oakland. At the time of the incident, plaintiff and his fellow longshoremen were using a pick-up truck to tow the line to a bollard where they were planning to place it as part of the docking process. Plaintiff alleges that the crew aboard the vessel took up the slack on a mooring line prematurely, causing the pick-up truck to be pulled or dragged from the dock into the water at the dock's edge. Plaintiff further alleges that he sustained injuries when he jumped from the pick-up truck before it fell into the water.

The principal disputed factual issues are:

A. How plaintiff's alleged injury occurred;

B. Whether Hapag-Lloyd breached its duty of reasonable care under the circumstances;

C. Whether the plaintiff acted reasonably to avoid the accident or reduce damages;

D. Whether the negligence of any other party caused or contributed to the alleged accident; and

E. The nature and extent of plaintiff's injuries and other damages resulting from the alleged accident.

### 3. Legal Issues

The issues in this action are governed by the Longshore Harbor Workers Compensation Act, 33 U.S.C. §905(b), which provides a statutory negligence action for workers covered by the LHWCA against a vessel owner, as interpreted by *Scindia Steam Navigation v. De Los Santos,* 451 U.S. 156, 165 (1981) and following cases. In *Scindia,* the Supreme Court defined the scope of the duties that shipowners owe to longshoremen. The first – known as the "turnover duty" - relates to the condition of the ship upon the commencement of stevedore operations. *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994), *citing Scindia*, 451 U.S. at 167. The second duty becomes applicable once stevedore operations have begun and provides that a shipowner must exercise reasonable care to prevent injuries to workers in the areas that remain under the "active control of the vessel." *Id*. The third duty – known as the "duty to intervene"- obligates vessel personnel to take corrective action when the independent contractor is acting obviously "improvidently." *Id*.

The principal disputed legal issues are:

A.   Whether the vessel's officers and crew were negligent under the duties as defined in *Scindia*;

B.   Whether the alleged negligence of the vessel was the legal cause of plaintiff's injuries and damages, if any;

C.   Whether the plaintiff was comparatively negligent; and

D.   Whether the negligence of a third party caused or contributed to the accident alleged by the plaintiff.

### 4. Motions

The parties do not anticipate motions at this time, but recognize that the necessity for discovery motions may arise and that on the basis of facts and information learned through the discovery process one or both parties may file a motion for summary judgment or summary adjudication.

### 5. **Amendment of Pleadings**

The parties do not anticipate the need to amend the pleadings at this time. They may re-evaluate this issue as discovery proceeds.

### 6. **Evidence Preservation**

To the extent it is within their control, the parties have taken steps to preserve evidence relevant to the issues reasonably evident in this action.

### 7. **Disclosures**

Plaintiff's disclosures were made on June 9, 2008. Plaintiff disclosed the following people likely to have discoverable information: Regina Segurson, Dr. Joseph Meyers, "Pee Wee" Murphy, Richard Ross and possibly other workers on the dock or taking part in the docking operation. Plaintiff disclosed medical records in the custody of Dr. Meyers. Finally, plaintiff itemized his damage claim as follows: 1) Past lost wages estimated $175,700 (approximately $68,000 per year; 2) Future lost wages and benefits, estimated at $1,000,000; past medical expenses, unknown but estimated to be $7,500; future medical expenses, unknown at present; and General damages, estimated to be $1,500,000.

Defendant recently requested and received additional information from the plaintiff regarding the incident to enable defendant to make its initial disclosures. Defendant expects to be in a position to make those disclosures by June 30, 2008.

### 8. **Discovery**

Defendant propounded and plaintiff responded to written discovery while this matter was pending in state court. Plaintiff recently propounded written discovery to the defendant and has informally provided documents to the defendant. The parties each anticipate propounding additional written discovery and to conduct depositions of factual and expert witnesses. The parties do not propose modifications or limitations of the discovery rules.

### 9. **Related Cases**

There are no related cases.

### 10. **Relief**

Plaintiff seeks special and general damages as the result of his alleged injuries.

**11. <u>Settlement and ADR</u>**

The parties have agreed to participate in private mediation through JAMS and have agreed upon Jerry Spolter as the mediator. Mr. Spolter is an experienced and effective mediator in maritime personal injury cases. The parties believe that the case will be ready for mediation following the exchange of written discovery and the depositions of key factual witnesses.

**12. <u>Consent to Magistrate Judge For All Purposes</u>**

The parties have consented to proceed before the Honorable Bernard Zimmerman, U.S. Magistrate Judge, for all purposes, including trial.

**13. <u>Other References</u>**

The parties do not believe that this matter is suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

**14. <u>Narrowing of Issues</u>**

The parties do not believe at this time that the issues can be narrowed. As discovery proceeds, however, the parties will re-evaluate whether the issues can be narrowed by stipulation or by motion for summary adjudication.

**15. <u>Expedited Schedule</u>**

The parties do not believe that this matter can be handled on an expedited basis, particularly because it involves a foreign shipowner and a foreign crew.

**16. <u>Scheduling</u>**

The parties propose the following discovery cut-offs:

    Percipient Discovery – 90 days before trial;

    Expert Disclosures – 75 days before trial;

    Supplemental disclosures – 60 days before trial;

    Expert Discovery – 30 days before trial.

Additionally, the parties propose that any dispositive or partially dispositive motions shall be heard no later than 30 days before trial.

////

////

**17. Trial**

Prior to removal, plaintiff requested a jury trial. The parties expect that the trial will take 7 to 8 court days to complete. The parties request a trial date in March, 2009.

**18. Disclosure of Non-party Interested Entities or Persons**

Defendant has filed a Disclosure of Interested Entities or Persons. In accordance with the Court's Standing Order, the undersigned counsel for the defendant restates that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: HAPAG-LLOYD AKTIENGESELLSCHAFT. The undersigned counsel for the plaintiff states that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: plaintiff's wife, Regina Segurson.

Dated: June 10, 2008        WELTIN LAW OFFICE, P.C.

          /s/ Patrick B. Streb
By _____
          Patrick B. Streb
          Attorneys for Plaintiff
          STEPHEN SEGURSON

Dated: June 10, 2008        FLYNN, DELICH & WISE LLP

          /s/ James B. Nebel
By _____
          James B. Nebel
          Attorneys for Defendant
          HAPAG-LLOYD AG